IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EUGENE WILLIAMS, DP-4172,)
    Petitioner,)
)
    v.) Civil Action No. 08-1737
)
SUPERINTENDENT, et al.,)
    Respondents.)

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Eugene Williams for a writ of habeas corpus be dismissed, and that because reasonable jurists could not conclude that there is a basis for appeal, that a certificate of appealability be denied.

II. Report:

Eugene Williams, an inmate at the State Correctional Institution at Huntingdon has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.[1] Williams is presently serving a sixteen to thirty-two year sentence imposed following his conviction, by a jury, of third degree murder at No. 2347 of 1997 in the Court of Common Pleas of Westmoreland County, Pennsylvania. This sentence was imposed on February

---

[1] This petition was originally filed in the United States District Court for the Middle District of Pennsylvania and transferred to this Court on December 22, 2008.

1

20, 2002.[2]

An appeal was taken to the Superior Court in which the issues raised were:

I. Whether the trial court erred by refusing to allow appellant's witness on luminol to testify as an expert?

II. Whether trial counsel was ineffective in failing to obtain a qualified expert to testify on luminol?

III. Whether trial counsel was ineffective in failing to introduce the preliminary hearing testimony of Darlene Walters and Brian Allen as substantive evidence?

IV. Whether the trial court erred by permitting into evidence hearsay statements of the decedent, Kevin Golden?

V. Whether the trial court erred by denying appellant's request to vacate the verdict based on the insufficiency of the evidence?

VI. Whether the trial court erred by denying appellant's request for a new trial on the basis that the verdict was against the weight of the evidence?[3]

In a Memorandum filed on January 7, 2004, the Superior Court affirmed the judgment of sentence.[4]

Williams filed a petition for allowance of appeal to the Pennsylvania Supreme Court in which the issues presented were:

I. Whether the Superior Court erred by affirming the trial court's ruling which disallowed appellant's witness on luminol to testify as an expert?

II. Whether the Superior Court erred by affirming the trial court's decision to permit hearsay statements of the decedent, Kevin Golden, into evidence?

---

[2] The petitioner was originally convicted of first degree murder and criminal conspiracy . The trial court granted a new trial based on ineffective assistance of counsel. On retrial, the petitioner was convicted of third degree murder and the instant sentence was imposed.

[3] See: Attachment 4 to the answer of the Commonwealth.

[4] See: Attachment 5 to the answer of the Commonwealth.

III. Whether the Superior Court erred by denying appellant's request to vacate the verdict based on the insufficiency of the evidence?

IV. Whether the Superior Court erred by denying appellant's request for a new trial on the basis that the verdict was against the weight of the evidence?[5]

Leave to appeal was denied on June 29, 2004.[6]

On October 27, 2004, petitioner filed a post-conviction petition. That petition was denied on January 16, 2007. A pro se appeal was taken to the Superior Court in which the questions presented were:

I. Whether the PCRA court's dismissal of the appellant's PCRA is supported by the record or otherwise free of legal error when appellant's counsel were ineffective at trial, direct appeal and during the PCRA stages of this case?

II. Whether the ineffective assistance of counsel at the trial stage, the direct appeal stage and PCRA stage violated the Strickland v. Washington standard and the 6th & 14th Amend. to the U.S. Constitution?[7]

On December 10, 2007, the Superior Court affirmed the denial of post conviction relief.[8]

Williams sought leave to appeal to the Pennsylvania Supreme Court and that request was denied on May 27, 2008.[9]

The instant petition was executed on December 10, 2008 and in it, Williams contends he is entitled to relief on the following grounds:

I. Ineffective assistance of counsel for failure to raise and preserve the knowing

---

[5] Id.

[6] Id.

[7] See: Attachment 6 to the answer of the Commonwealth.

[8] See: Attachments 7 and 8 to the answer of the Commonwealth.

[9] See: Attachment 8 to the answer of the Commonwealth.

3

use of perjured testimony concerning Robert Stenhouse.

II. Ineffective assistance of counsel for failure to raise and preserve prosecution's knowing sue of perjured testimony and witness intimidation.

III. Ineffective assistance of counsel for failure to raise and preserve conspiracy to obstruct justice, tampering with evidence and prosecutorial suppression of evidence.

IV. Ineffective assistance of counsel for failure to raise and preserve the failure of the prosecution to present evidence alluded to in its opening statement.

V. Ineffective assistance of counsel for failure to raise and preserve issue of conspiracy to obstruct justice, prosecutorial misconduct and prosecutorial suppression of exculpatory evidence.

VI. Ineffective assistance of counsel for failure to raise and preserve the issue of bribery of a witness by the prosecutor.

VII. Ineffective assistance of counsel for poor presentation of the defense's expert witness, Walter Komorski.

VIII. Ineffective assistance of counsel for failure to preserve and raise issue of missing exculpatory evidence by not requesting appropriate jury instructions.

IX. Ineffective assistance of counsel in failure to raise, preserve and present double jeopardy defense following petitioner's first trial.

X. Actual innocence of the petitioner.

XI. Ineffective assistance of counsel for failure to move for a mistrial nor preserve the issue regarding discussions between the prosecutor and a prosecution witness.

XII. Ineffective assistance of counsel for failing to fully comprehend the cause of the victim's death.

XIII. Ineffective assistance of counsel for failure to impeach Commonwealth witnesses Allen and Black with their prior crimen falsi convictions.

XIV. Ineffective assistance of counsel for failing to raise and preserve issue of court's error in basing petitioner's sentence on erroneous information.

XV. Ineffective assistance of counsel for failure to request a jury instruction

discussing testimony which conflicted with physical facts.[10]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

---

[10] See: Petition at pp C-H.

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, in its answer, the Commonwealth concedes that the petitioner has exhausted the available the state remedies on issues II, III, VII, VIII, XII, XIII, XIV and XV, but has failed to do so on the remaining issues.[11] In Coleman v .Thompson, 501 U.S. 722,750 (1991), the Court held:

---

[11] While we are not as certain as the Commonwealth that the petitioner has indeed exhausted his state court remedies on all these issues, since the Commonwealth concedes this matter, these issues will be addressed.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Since no such showing is made here, the remaining issues should be dismissed for failure to exhaust the available state court remedies. Of the issues on which the petitioner has exhausted the available state court remedies, issues II, III, VII, VIII, XII, XIII, XIV and XV, they all contain allegations of ineffective assistance of counsel.

The background to this litigation is set forth in the in the January 7, 2004 Memorandum of the Superior Court:

> In June of 1997, Kevin Golden was stabbed thirty-eight times with a knife and an ice pick. The victim bled to death in Appellant's apartment in the City of New Kensington. Appellant and his former co-defendant, Daniel Tyus, were charged with criminal homicide and criminal conspiracy as a result of the victim's death. Following a ten day trial, a jury found Appellant guilty of first-degree murder and criminal conspiracy... Pursuant to Appellant's consolidated post-sentence motion, the trial court granted a new trial on the basis of trial counsel's ineffectiveness...
>
> In preparation for the new trial in the matter, the trial court granted severance so that Appellant and Tyus proceeded separately through pre-trial motions... Appellant's case proceeded to trial. On November 9, 2001, a jury found Appellant guilty of murder in the third degree... On February 20, 2002, the trial court sentenced Appellant to serve sixteen to thirty-two years of incarceration.[12]

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at

---

[12] See: Attachment 5 to the answer of the Commonwealth. At pp.144a-145a.

688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one."). Thus, we address the issues raised by Williams.

His first argument is that counsel was ineffective for failing to challenge the prosecutor's use of perjured testimony and witness intimidation. Specifically, Williams contends that the trial testimony of Brian Allen was contrary to his testimony at the preliminary hearing, and as a result, counsel was ineffective for permitting the introduction of this perjured and coerced testimony. Specifically, at the preliminary hearing, Allen testified that although he was severely intoxicated he thought he observed the petitioner stab the victim in the left shoulder with an ice pick before

8

Allen departed from the volatile scene;[13] that while the autopsy report did mention that amongst the thirty-eight stab wounds inflicted on the victim one was to his right shoulder, whereas at trial, Allen testified that he observed the petitioner stab the victim in the left shoulder (App.p.814a); that he had been threatened by the police (App.p.824a, 826a), but that his in court testimony reflected what he knew (App.p.825a). In addition, during his cross-examination, Allen testified that at the preliminary hearing he had testified that he was not sure whether or not there was a stabbing (App. pp.828a-829a).

At the Superior Court noted, that in reviewing this claim the trial court had concluded that this discrepancy was *de minimis* in light of the magnitude of the injuries inflicted and that there was no reasonable probability that a difference result would have occurred had counsel pursued this matter (App.p.271). In order to support a basis for relief, the burden is on the petitioner to demonstrate that this testimony, even if regarded as perjured, was material. Campbell v. Greene, 440 F.Supp.2d 125 (N.D.N.Y. 2006). No such showing is made here, and clearly, this discrepancy in no way undermines the confidence is the outcome of the trial, and does not provide a basis for relief here. For this reason, it cannot be concluded that counsel was ineffective. In addition, during its instructions, the trial court clearly cautioned the jury to consider the intoxicated conditions of certain witnesses, specifically Allen and Walters, in determining the proper weight to accord their testimony (App. P. 1383a).

The next issue raised is that counsel was ineffective for failing to raise the issue of prosecutorial tampering with and suppression of evidence. Specifically in this regard he argues

---

[13] See: Transcript of preliminary hearing held on July 7, 1997 at pp. 51-53, 58, 77, 78, 81 and 85)

that the jury was not informed that the police had removed "material" evidence i.e., drugs, money and a wallet from the pocket of the victim and that the prosecutor then argued that the absence of these items provided a motive for the crime, i.e., robbery.[14] However, this issue does not provide any basis for contending that defense counsel was ineffective, since in her closing argument she informed the jury that the lack of these items as well as blood stains demonstrate that "the scene was tampered with [by the police] ..." She also argued her interpretation of the "staged" crime scene as well as her conclusion that the victim died as a result of a drug overdose.[15]

That is, the prosecution's theory of the case was placed in controversy, and as such was a matter to be resolved by the factfinder.

The next issue concerns counsel's alleged ineffectiveness in presenting the petitioner's expert witness, Walter Komorski. Specifically, defense counsel had retained Mr. Komorski's services to offer expert testimony that his luminol testing failed to disclose the presence of any significant blood at the crime scene. This testimony was designed to rebut the prosecution's theory that the cause of death was exsanguination. Specifically, when defense counsel attempted to qualify the witness as an expert in the use of luminol, it because readily apparent that he had no such expertise.[16] But as the Court in making its determination concluded, the witness' testimony would have been that when he applied the luminol in the bedroom of the crime scene very little blood was discovered, however, pictures which had been introduced into evidence demonstrated some limited blood spattering in the bedroom, and that the proposed testimony was

---

[14] See: Petition at p.48.

[15] See: App. pp.1327a-1335a.

[16] See: App. Pp.1186a-1227a.

non-probative.[17] Thus, the issue of counsel's alleged ineffectiveness is immaterial since the witness would have not offered any significant probative evidence. Additionally, as the Superior Court observed, "Appellant failed to establish that any luminol expert would have been willing and able to testify on his own behalf."[18]

Petitioner also contends that counsel was ineffective for failing to raise the issue of missing exculpatory evidence and not requesting an appropriate jury instruction in that regard. Specifically, he contends that the police falsified critical information concerning witness Robert Stenhouse so as to provide an alibi for him making it impossible for him to have been the perpetrator of the crime thereby perhaps inducing him to offer perjured testimony.[19] This allegation is merely an allegation and unsupported by any evidence of record. Additionally, at trial, the defense called David Graham, who was a shift manager at the Alle-Kiski Pavilion.[20] At the Pavilion, he was charged with signing residents in and out of the facility. He testified that Stenhouse checked into the facility between 5 and 6 am and checked out about 15 minutes later.[21]

---

[17] See: Id. at p.1222a.

[18] See: Attachment 2 at p. 272a.

[19] Stenhouse testified that although incarcerated at a half-way house, with the aide of the decedent, he had arranged to sell crack cocaine; that he returned to Alle-Kiski around 5:45 am and remained there until about 10:30 am; that he went to the victim's apartment but received no response; that the defendant was present and went into the apartment and discovered the victim; that the police were summoned; that he agreed to testify against the petitioner in exchange for not being charged with drug activity and receiving a reduction in his federal sentence. (Appendix at pp.417a-505a).

[20] The Alle-Kiski Pavilion is an alternate prisoner housing facility ( Appendix at pp. 1178a-1179a)

[21] Appendix at pp.1179a-1180a.

Thus, the evidence which the plaintiff desired to introduce contradicting Stenhouse's testimony that he was at Alle-Kiski during the time of the commission of the crime was clearly before the jury for its consideration, and petitioner's allegation that counsel was ineffective in not securing additional evidence casting doubt on Stenhouse's testimony is without merit.

The next issue raised is counsel's alleged ineffectiveness for failing to comprehend the cause of the victim's death. Specifically, the petitioner argues that counsel was ineffective in failing to recognize that the victim died as a result of a drug overdose and not from the thirty-eight stab wounds inflicted on him.

At the trial Dr. Cyril H. Wecht, the Allegheny County Coroner, testified that following his autopsy, he concluded that the cause of death was exsanguination from the thirty-eight stab wounds.[22] Defense expert, Dr. Eric Vey testified that although the victim's urine tested negatively for cocaine, his blood was not tested for cocaine.[23] Dr. Vey also concluded that a negative urine test does not mean that cocaine is not in the blood.[24] He also concluded that based on his review of the autopsy report exsanguination as the cause of death cannot be substantiated.[25] However, Dr. Vey did concede that the mortality rate from the stab wounds would increase with the passage of time and lack of treatment.[26] As defense counsel testified at the post-conviction hearing, the prosecution's theory was that the victim had died from the

---

[22] See: Appendix at pp.957a.-960a.

[23] See: Appendix at pp. 1295a.-1296a.

[24] See: Appendix at p. 1300a.

[25] See: Appendix at pp.1307a, 1309a..

[26] See: Appendix at 1312a.

stabbing while the defense's theory was that the victim died as a result of a drug overdose.[27] This strategy was designed to create an issue of doubt which would not sustain a conviction. Thus, the conflicting testimony does not demonstrate any ineffectiveness of the part of defense counsel but rather a strategy of inflicting doubt into the fact-finding process.

The petitioner also contends that counsel was ineffective for failure to impeach the credibility of Commonwealth witnesses Allen and Black with convictions of crimen falsi.

At the post-conviction hearing, trial counsel testified that she elected not to impeach Allen and Black with their prior convictions since she believed that Allen's testimony was helpful to the defense[28] She also determined that the best method to impeach Allen was through evidence of his total intoxication at the time of the crime; his inconsistent testimony regarding where he saw the injury inflicted by the petitioner, and his response that his testimony had been coerced by the police[29]

Thus, the failure to challenge their testimony with prior convictions appears to be a sound tactical decision of counsel and not subject to challenge here. Rolan v. Vaughn, 445 F.3d 671 (3d Cir. 2006).

The petitioner also contends that counsel was ineffective for failing to challenging the court's imposition of sentence based on erroneous information. Third degree murder, under

---

[27] See: Appendix at 1419a-1429a.

[28] See: See PCRA hearing testimony of Mary Baloh.

[29] See: Appendix at p. 1561a. It should also be noted in this regard, that the post-conviction court observed at p. 1594a, "the evidence in this case was fraught with inconsistencies in the evidence and testimony from less than reliable witnesses, leaving the jury with the difficult task of sorting out truth from falsehood in coming to a just verdict.

Pennsylvania law is a felony of the first degree.[30] As such a sentence of up to forty years may be imposed.[31] When reviewing a sentence, a federal habeas court needs only to determine whether the imposed sentence falls exceeds the statutory limits <u>LaBoy v. Carroll</u>, 437 F.Supp. 2d 260 (D.Del.2006). In the instant case the petitioner was sentenced to sixteen to thirty-two years, a sentence which clearly is within the statutory maximum, and for this reason, any challenge does not provide a basis for federal habeas relief.

Finally, the petitioner contends counsel was inadequate for failing to request a jury instruction regarding conflicts in the testimony with the physical facts. While there is no specific instruction which the petitioner can cite us to, the court in its instructions did alert the jury that it was obliged to resolve conflicting and suspect testimony.[32]

Thus, the theory presented by defense counsel that death was not due to exsanguination, and the total unreliability of prosecution witness Black, cannot be said to have been constitutionally defective, and accordingly, there is no basis for granted relief here.

Accordingly, it is recommended that the petition of Eugene Williams for a writ of habeas corpus be dismissed, and that because reasonable jurists could not conclude that there is a basis for appeal, that a certificate of appealability be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.

---

[30] 18 Pa.C.S.A. 2502(c).

[31] 18 Pa.C.S.A. 1102(d).

[32] See: Appendix at 1382a and 1383a.

Failure to file timely objections may constitute a waiver of any appellate rights.

                                                  Respectfully submitted,

                                                  s/Robert C. Mitchell,

Entered: May 21, 2009.                      United States Magistrate Judge